**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UAW – International, et al.,

    Plaintiffs,                                  Case No. 11-cv-14630

    v.                                          **District Judge Denise Page Hood**

TRW Automotive U.S. LLC,              **Magistrate Judge Mona K. Majzoub**

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and individual plaintiffs Martin Lamer, John Yasso, Kim Taskila and Ronald Gardner filed this action against Defendant TRW Automotive U.S. LLC ("TRW") seeking to enforce retirement healthcare benefits under collective bargaining agreements and employee welfare plans. (Docket no. 1.)

Before the Court are two motions for attorney's fees. (Docket no. 63; docket no. 77.) The Court referred these motions to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 72; docket no. 78.) The undersigned has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

**I.    RECOMMENDATION**

For the reasons stated herein, the undersigned recommends that the Court **DENY** Plaintiffs' motions for attorney's fees (docket no. 63; docket no 77).

## II.     REPORT

### A. Background

TRW operated an automotive plant in Sterling Heights, Michigan, which closed in 2006. Before the plant closed, TRW entered into a series of collective bargaining agreements with the UAW and Local 247, the collective bargaining representatives of some of TRW's Sterling Heights employees. The last CBA was negotiated in 2002. After TRW announced its plans to close the Sterling Heights plant on August 17, 2005, TRW and the UAW were not able to negotiate a closing agreement. They instead agreed to extend the 2002 CBA, which remains in effect.

The 2002 CBA provided health insurance coverage under Blue Cross/Blue Shield. Beginning in 2007, TRW changed the default health insurance carrier to Humana. To account for differences in the new health plans, TRW provided its employees with coverage that exceeded the 2002 CBA's requirements, including providing a Medicare Advantage plan for Medicare-eligible retirees. In 2011, TRW sent a letter to its former employees informing them that it "would discontinue providing Medicare-eligible retirees and surviving spouses' healthcare." TRW planned to replace the Humana healthcare coverage with Health Reimbursement Accounts ("HRAs") that would be funded at TRW's discretion.

In response to the 2011 Letter, the UAW, along with multiple former employees from the Sterling Heights plant filed the present lawsuit October 21, 2011, asserting that the proposed HRA arrangement "material[ly] reduc[ed]" their healthcare benefits in breach of the 2002 CBA. The complaint also alleged that transferring the retirees to the HRAs violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3).

On January 25, 2012, TRW moved to compel arbitration. (Docket no. 8.) In support, TRW cited Section 4 of the 2002 CBA, which provides:

2

> 4.1 Exclusive Remedy: The Union and the employees agree that the grievance and arbitration procedures provided herein are adequate to provide fair and final determination of all grievances which may arise out of the employment relationship during the term of this Agreement and that such procedures shall be the exclusive remedy for the enforcement by them of any claim against the Company.

(*Id.* at 7.)

The CBA defines "grievance" as follows:

> 4.1.1 Grievance Defined. A grievance is any complaint, dispute or controversy in which an employee or the Union claims that the Company has failed to carry out a provision of the Agreement and which involves a question concerning the interpretation or application of or compliance with this Agreement, including any question relating to the rates of pay, hours of work and other conditions of employment of any employee.

(*Id.*)

On September 30, 2012, the district judge granted TRW's motion to compel arbitration. (Docket no. 26.) The Court denied Plaintiffs' request to litigate their ERISA claims in court, observing that Plaintiffs "[we]re essentially seeking rights that arise out of the CBA and not an independent ERISA plan." (*Id.* at 7.)

The arbitrator described the issue before him as "whether the adoption of the HRA structure as implemented by TRW constitutes a breach of contract." (Docket no. 34-6, p. 12.) Prior to the arbitration hearing, the parties entered into a stipulation that "[t]he [arbitration] motions will be limited to the issues of contract interpretation and breach." (*Id.* at 7.) However, the stipulation also stated that "[t]he parties each reserve[d] the right to present further evidence to address issues unresolved by the Arbitrator's decision on the motions, including any factual disputes; ERISA issues; etc." (*Id.*)

The arbitrator issued his decision on April 18, 2013. (*Id.*) In his opinion, the arbitrator recited the issues before him, including Plaintiffs' request that he "[d]eclare that by terminating retirement health insurance, and by substituting individual health retirement accounts for the health

3

insurance subject to TRW's self-declared 'right to amend or terminate' those accounts, TRW breached the governing CBAs and the ERISA-regulated health insurance plan, violated ERISA, and breached its fiduciary duties." (*Id.* at 6.) Plaintiffs also requested that the arbitrator "[d]irect TRW to pay the costs and expenses and attorney fees of UAW, class counsel, and the retirees and their dependents and surviving pouses [*sic*] encompassed by this arbitration, incurred in connection with the litigation and the arbitration proceedings, under 29 U.S.C. §1132(g)(1) and otherwise, and to pay such other costs, expenses, fees, compensatory, and exemplary, amounts as may be warranted." (*Id.* at 7.)

The arbitrator concluded that TRW breached the 2002 CBA when it transferred the retirees from their Humana healthcare coverage to the HRAs. However, the arbitrator denied Plaintiffs' request for attorney's fees, instead holding that "each party shall bear the expense of its own representatives," in accordance with Paragraph 4.4 of the CBA. (*Id.* at 27.)

On October 4, 2013, Plaintiffs filed a motion before this Court for attorney's fees under §1132(g)(1) of ERISA. (Docket no. 33.) Nearly three weeks later, Plaintiffs filed a "renewed motion for summary judgment," seeking a declaration that they "are statutorily entitled to a judgment that their benefits are vested under ERISA, not just the CBA." (Docket no. 39.)

TRW moved to strike these motions as procedurally improper, contending that the arbitrator had already granted Plaintiffs' ERISA claim and denied their request for fees under §1132(g)(1). (Docket no. 34; docket no. 44.)

In an order dated January 16, 2018, the Court denied Plaintiffs' motion for fees without prejudice because it was "was not ripe for consideration when filed." (Docket no. 62, p. 11.) The Court then determined that the arbitrator "did not address Plaintiffs' rights or claims under ERISA" and concluded that TRW's breach of the 2002 CBA also violated ERISA. (*Id.* at 11, 17.)

4

On January 30, 2018, Plaintiffs renewed their motion for attorney's fees. (Docket no. 63.) Soon thereafter, TRW appealed the order of January 16, 2018 to the United States Court of Appeals for the Sixth Circuit. (Docket no. 66.) On March 5, 2019, the Sixth Circuit remanded the appeal as unripe, reasoning that "[b]ecause the district court declined to decide whether TRW owes attorney's fees for its violation of ERISA, appellate review of the order would be premature." (Docket no. 71, p. 12.) Plaintiffs then filed a supplementary motion to recover their appellate fees. (Docket no. 77.) The district judge referred both the renewed fees motion and the supplementary fees motion to the undersigned for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). (Docket no. 72; docket no. 78.)

**B. Analysis**

Plaintiffs move to recover attorney's fees pursuant to §1132(g)(1) of ERISA. (Docket no. 63; docket no. 77.) That section permits the court in an ERISA action "in its discretion" to "allow a reasonable attorney's fee and costs of action to either party."

As noted above, the arbitrator denied Plaintiffs' request for attorney's fees, determining that "each party shall bear the expense of its own representatives," in accordance with Paragraph 4.4 of the CBA, which provides that "[e]ach party shall bear the expense of his own representatives" and that "all other expenses of the arbitration, if any, shall be shared equally by the parties." Plaintiffs did not move to vacate the arbitrator's decision. (Docket no. 38, p. 5.) Instead, Plaintiffs contended that the arbitrator "decided the CBA issues" but did not address "the ERISA attorney fee issue." (*Id*.)

This distinction evaporates under scrutiny. Plaintiffs seek to be reimbursed for 583.25 hours of attorney's fees as of January 30, 2018. (Docket no. 63-1, p. 6.) That figure includes time billed for (1) the unsuccessful opposition to TRW's motion to compel arbitration, (2) the

5

eventually withdrawn appeal of the order compelling arbitration, and (3) the arbitration proceeding itself.  (Docket no. 63-2, pp. 4–9.)  Query: what portion of these fees was incurred on the purportedly undecided ERISA claim?  It is impossible to tell from the bills, likely because, as this Court determined, Plaintiffs "[were] essentially seeking rights that arise out of the CBA and not an independent ERISA plan."  (Docket no. 26, p. 7.)  Because there was no separate ERISA issue, the Court dismissed the case instead of staying it until the arbitration proceeding concluded.  (*Id.*)

That the CBA claim encompasses the ERISA claim is apparent from at least three factors.  First, Plaintiffs alleged during the arbitration that the same action by TRW (the change to HRAs) breached the CBA and violated ERISA.  (Docket no. 34-6, p. 6.)  Second, Plaintiffs claimed to have prevailed on their ERISA claim in their initial motion for attorney's fees, i.e., before the Court granted their "renewed motion for summary judgment" on the ERISA claim.  (Docket no. 33.)  Finally, the renewed motion for summary judgment was only six pages long and was substantively unopposed by TRW.  (Docket no. 39; docket no. 44.)

Accordingly, the Court should find that Plaintiffs are bound by the arbitrator's determination that each side will bear its own fees through the date of the arbitration award.

To the extent that Plaintiffs seek fees incurred since the arbitration concluded, the merits do not favor their position.  Plaintiffs reopened this action to relitigate the issue of attorney's fees, as made plain by the fact that they filed their initial motion for fees (docket no. 33) before their renewed motion for summary judgment (docket no. 39).  Moreover, the arbitrator gave the parties an opportunity to raise any issues omitted from his decision, including "ERISA issues."  (Docket no. 34-6, p. 7.)  Plaintiffs raised no such issue.  And although the Court granted Plaintiffs' motion for summary judgment on the ERISA claim, TRW conceded that it had violated ERISA and opposed Plaintiffs' motion only on procedural grounds.  (Docket no. 44.)  The Court should not

6

grant attorney's fees under ERISA for this type of "trivial success on the merits" or "purely procedural victor[y]." *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255, 130 S. Ct. 2149, 2158, 176 L. Ed. 2d 998 (2010) (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n. 9 (1983)).

### C. Conclusion

For the above-stated reasons, the undersigned recommends that the Court **DENY** Plaintiffs' motions for attorney's fees (docket no. 63; docket no. 77).

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically

address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: August 20, 2019		s/ Mona K. Majzoub
		MONA K. MAJZOUB
		UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  August 20, 2019		s/ Leanne Hosking
		Case Manager