## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  March 11, 2021

Mr. Gilbert Brosky
Mr. Gregory Valentin Mersol
Baker & Hostetler
127 Public Square
Suite 2000
Cleveland, OH 44114-1214

Mr. William Arthur Wertheimer Jr.
Law Office
188 Grove Street
Montclair, NJ 07042

Re:  Case Nos. 19-2252/2262, *UAW International, et al v. TRW Automotive U.S. LLC*
Originating Case No. : 2:11-cv-14630

Dear Counsel,

The Court issued the enclosed opinion today in these cases.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc:  Ms. Kinikia D. Essix

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0127n.06

Nos. 19-2252/2262

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UAW INTERNATIONAL, et al. | ) | |
| | ) | **FILED** |
| Plaintiffs-Appellees/Cross-Appellants, | ) | Mar 11, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| TRW AUTOMOTIVE U.S. LLC, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant/Cross-Appellee. | ) | |
| | ) | |

BEFORE:     ROGERS, SUTTON, and STRANCH, Circuit Judges.

ROGERS, Circuit Judge.   This cross-appeal concerns whether attorney's fees were properly awarded to plaintiffs in a collective bargaining dispute subjected to arbitration.   Plaintiffs-Appellees, retirees and a labor union representing former automotive manufacturing workers, brought suit in federal district court under a previously negotiated collective bargaining agreement alleging breach of contract, breach of fiduciary duty, and violations of the Employee Retirement Income Security Act.   Per the terms of the CBA, the district court entered an order requiring plaintiffs to arbitrate all of their claims.   The neutral arbitrator rendered a favorable decision for plaintiffs on the contractual claim but declined to award attorney's fees pursuant to a fee waiver provision in the agreement.   On a subsequent motion to recover attorney's fees before the district court, the district court reopened the case, granted judgment in favor of plaintiffs on the ERISA claim, denied attorney's fees for costs incurred through the date of the arbitrator's award, but awarded attorney's fees incurred after the date of arbitration.   Because all of plaintiffs' claims were

subject to mandatory arbitration, and the arbitrator is the only entity empowered to conduct factfinding and fashion a proper remedy for arbitrable labor claims, the district court had no authority to enter summary judgment on the ERISA claims or to award plaintiffs post-arbitration ERISA fees.

This is the second time that the attorney's fees issue in this case has been before us. In the earlier appeal, we lacked appellate jurisdiction to review the district court's order determining that TRW Automotive U.S. LLC ("TRW") is liable for the UAW and retired plaintiff employees' attorney's fees under the Employee Retirement Income Security Act ("ERISA") because the district court had not yet determined the amount to be awarded. The issue is now ripe for review, as the district court has awarded UAW $183,300.91 in attorney's fees and costs.

TRW operated an automotive plant in Sterling Heights, Michigan, which closed in 2006. TRW entered into a series of collective bargaining agreements ("CBA") with the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW") and its then Local 247, the collective bargaining representatives of some of TRW's Sterling Heights employees. The last CBA was negotiated in 2002. After TRW announced that it planned to close the Sterling Heights plant in 2005, TRW and the UAW were unable to negotiate a closing agreement. Instead, they agreed to extend the 2002 CBA, which remains in effect.

The 2002 CBA provides health insurance coverage for active and retired employees. Originally, the 2002 CBA provided health insurance coverage under Blue Cross Blue Shield. In 2007, TRW changed the default health insurance carrier to Humana. Because Humana did not offer a plan that perfectly corresponded to the 2002 CBA's requirements, TRW voluntarily provided its employees with coverage that exceeded the CBA's requirements to account for the differences in the health plans. Subsequently, in 2011, TRW notified its former employees that it

Case Nos. 19-2252/2262, *UAW Int'l v. TRW Automotive*

planned to replace the Humana health care coverage with Health Reimbursement Accounts ("HRA") that TRW would fund at its discretion.

In response, the UAW and several retirees filed suit in October 2011. Plaintiffs alleged that the proposed HRA arrangement "material[ly] reduc[ed]" their health care benefits and that TRW therefore breached the 2002 CBA, violated ERISA (29 U.S.C. § 1132(a)(1)(B) and (a)(3)), and breached its fiduciary duty. Plaintiffs brought their breach of contract claim pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Plaintiffs requested various forms of relief, including attorney's fees, which are at issue here.

In January 2012, TRW filed a motion to compel arbitration of plaintiffs' claims pursuant to the 2002 CBA. TRW argued that the parties had agreed to arbitrate all disputes regarding TRW's compliance with the CBA. The 2002 CBA states:

> 4.1 Exclusive Remedy: The Union and the employees agree that the grievance and arbitration procedures provided herein are adequate to provide a fair and final determination of all grievances which may arise out of the employment relationship during the term of this Agreement and that such procedures shall be the exclusive remedy for the enforcement by them of any claim against the Company.

The following section of the CBA defines the term "grievance":

> 4.1.1 Grievance Defined. A grievance is any complaint, dispute or controversy in which an employee or the Union claims that the Company has failed to carry out a provision of the Agreement and which involves a question concerning the interpretation or application of or compliance with this Agreement, including any question relating to the rates of pay, hours of work and other conditions of employment of any employee.

Further, Section 4.4 of the CBA confines the scope of the arbitrator's authority and requires each party to bear their own attorney's fees in the event of arbitration. The 2002 CBA declares:

> 4.4. Step III, Arbitration . . . The impartial arbitrator shall not have authority to alter or modify this agreement. Each party shall bear the expense of its own representatives; and all other expenses of the arbitration, if any, shall be shared equally by the parties. The award of the impartial arbitrator shall be final and binding upon the parties and upon all employees and persons affected, all of whom

Case Nos. 19-2252/2262, *UAW Int'l v. TRW Automotive*

agree to abide by his award. The expenses of the impartial arbitrator, if any, shall be shared and paid equally by the parties.

The district court granted TRW's motion to compel arbitration in September 2012. In light of TRW's successful motion to compel arbitration, the court dismissed the case without prejudice and permitted any party to file a motion to reopen the case after arbitration.

Plaintiffs appealed the district court's order compelling arbitration. While the appeal was pending, the arbitrator ruled in April 2013 in plaintiffs' favor on the question of whether TRW breached its contractual duties under the CBA. Plaintiffs then moved for voluntary dismissal of their appeal of the district court's order compelling arbitration, and we granted the motion.

After the district court compelled arbitration, plaintiffs requested a broad array of relief from the arbitrator. They asked the arbitrator to declare that TRW's substitution of retirement health insurance coverage with HRAs breached the CBA, violated ERISA, and breached TRW's fiduciary duties. Plaintiffs also requested that the arbitrator "[d]irect TRW to cease its CBA breaches and ERISA violations" and

> [d]irect TRW to pay the costs and expenses and attorney fees of UAW, class counsel, and the retirees and their dependents and surviving spouses encompassed by this arbitration, incurred in connection with the litigation and arbitration proceeding, under 29 U.S.C. § 1132(g)(1) and otherwise, and to pay such other costs, expenses, fees, compensatory, and exemplary amounts as may be warranted[.]

Prior to the arbitration hearing, the parties had stipulated that "[t]he [cross-motions for summary judgment submitted to the Arbitrator] will be limited to the issues of contract interpretation and breach." However, the stipulation also stated that "[t]he parties each reserve the right to present further evidence to address issues unresolved by the Arbitrator's decision on the motions, including any factual disputes; ERISA issues; *etc*." The arbitrator accordingly described the issue before him as "whether the adoption of the HRA structure as implemented by TRW constitutes a

4

breach of contract." The arbitrator issued his decision in April 2013, determining that TRW breached the 2002 CBA when it transferred the retirees from their Humana health care coverage to the HRAs.

The arbitrator ordered TRW to restore the retirees' health care coverage back to the Humana coverage to remedy its breach of the CBA. However, the arbitrator declined to grant plaintiffs' request for attorney's fees pursuant to Section 4.4 of the CBA, which provides that each party must bear the cost of its own representatives.

TRW filed a separate action in May 2013 to partially vacate the arbitration award. TRW argued in a motion for summary judgment filed in September 2013 that the arbitrator exceeded his authority because the arbitration award required TRW to provide a level of benefits that exceeded what was required under the CBA. The district court denied TRW's motion and affirmed the arbitrator's award in January 2018. The court determined that the arbitrator's award was appropriate because it was reasonable for the arbitrator "to conclude that the parties had agreed to modify the CBA to have the Humana plan replace the Blue Cross Blue Shield plan." TRW appealed.

Plaintiffs, on the other hand, did not ask the arbitrator to make any additional findings and did not move the district court to vacate any portion of the arbitrator's decision. In October 2013, plaintiffs filed a motion for attorney's fees and expenses under ERISA. Plaintiffs also filed a renewed motion for summary judgment later that same month, arguing that TRW's breach of the CBA constituted a violation of health benefits vested under ERISA (the "ERISA vesting claim"). In response, TRW opposed the motion for attorney's fees and filed a motion to strike plaintiffs' renewed motion for summary judgment. TRW argued in part that the motions were actually an untimely challenge to the arbitrator's decision denying plaintiffs' request for attorney's fees and

that the district court lacked subject matter jurisdiction over the renewed motion for summary judgment.

The district court granted plaintiffs' renewed motion for summary judgment and denied TRW's motion to strike in January 2018.  The district court determined that the arbitrator ruled only that TRW breached the CBA and did not address plaintiffs' ERISA vesting claim.  The court concluded that plaintiffs' renewed motion for summary judgment was therefore not a challenge to the arbitration award subject to the three-month limitations period and was accordingly not time barred.  The court granted plaintiffs' renewed motion for summary judgment, reasoning that TRW's violation of the CBA also constituted a violation of ERISA.  But the court dismissed plaintiffs' motion for attorney's fees without prejudice because it was premature, as it was filed before the court had decided plaintiffs' ERISA claim.  Plaintiffs then filed a second motion for attorney's fees, which TRW again opposed.

TRW appealed the district court's grant of plaintiffs' renewed motion for summary judgment.  In its appeal, TRW again argued that the renewed motion for summary judgment was untimely and that the district court lacked jurisdiction to decide plaintiffs' ERISA claim.

We consolidated TRW's appeals in the separate cases of: (1) the district court's order granting plaintiffs' renewed motion for summary judgment, which determined that TRW's breach of the CBA also amounted to an ERISA violation, and permitting plaintiffs to resubmit their motion for attorney's fees; and (2) the district court's order in the separate action determining that the arbitrator did not exceed his authority when he ordered TRW to reinstate the enhanced health care benefits that it provided between 2007 and 2012.  In March 2019, we concluded that we did not have appellate jurisdiction over the ERISA attorney's fees issue because "[a] mere determination of liability under ERISA, without further decision about entitlement to relief, does

Case Nos. 19-2252/2262, *UAW Int'l v. TRW Automotive*

not constitute . . . a final judgment." *UAW Int'l v. TRW Auto. U.S. LLC*, 766 F. App'x 186, 194 (6th Cir. 2019). The district court's decision would be final only when the court determined the amount of attorney's fees to be awarded, which had not occurred yet. *Id.* But we did have appellate jurisdiction over the district court's order denying TRW's motion to partially vacate the arbitration award. We determined that "the arbitrator did not arguably construe or apply the 2002 CBA when he ordered TRW to reinstate the enhanced healthcare coverage that it began providing in 2007, and he exceeded his authority by determining that the parties modified the terms of the 2002 CBA." *Id.* at 197. Accordingly, the district court erred in enforcing this part of the award and the case was remanded back to the district court for further proceedings.

On remand, in April 2019, plaintiffs filed a supplemental motion for additional attorney's fees. As with the earlier motions for attorney's fees, TRW also opposed this motion. The district court referred the two pending motions for attorney's fees to a magistrate judge. In August 2019, the magistrate judge issued a report and recommendation recommending that the requests be denied. The magistrate reasoned that plaintiffs' contention that the arbitrator determined the CBA issues without addressing the ERISA attorney's fees issue was a "distinction [that] evaporates under scrutiny" because the CBA claim encompassed the ERISA claim. The magistrate recommended that the district court conclude that plaintiffs are therefore "bound by the arbitrator's determination that each side will bear its own fees through the date of the arbitration award." The magistrate also recommended denying plaintiffs' request for attorney's fees incurred since arbitration concluded. The magistrate reasoned that plaintiffs reopened the case to relitigate the attorney's fees issue that the arbitrator had already decided, plaintiffs could have raised the ERISA issues with the arbitrator but elected not to, and plaintiffs at most had achieved "trivial success on the merits" or a "purely procedural victor[y]" when the district court granted their renewed motion

for summary judgment because TRW conceded it violated ERISA and opposed the motion on only procedural grounds.

The district court in September 2019 declined to fully follow the magistrate judge's recommendation and instead granted in part plaintiffs' motions for attorney's fees. The court declined to award any ERISA attorney's fees and costs incurred through the date of the arbitration award because "the ERISA claim was not addressed prior to or at arbitration." The court further reasoned that plaintiffs: "(1) did not move to vacate the arbitrator's decision denying attorney fees; (2) voluntarily dismissed their appeal of th[e] [c]ourt's order compelling arbitration . . . ; and (3) did not otherwise challenge the denial of an award of attorney fees and costs for Plaintiffs' expenses related to the arbitration." But the court granted plaintiffs' request for attorney's fees and costs related to their ERISA claim incurred after the arbitration award. The court referred to its January 2018 conclusion that the arbitration award did not address plaintiffs' ERISA vesting claim and that they could therefore seek attorney's fees under § 1132(g) at the district court. Finally, the court concluded that plaintiffs were entitled to attorney's fees not just for the efforts related to filing the renewed motion for summary judgment but also for an array of other activity since the arbitration award was issued in April 2013, including the filings in the previous appeal before us. Although the court acknowledged that some of the entries did not contain detail relating to the issue of whether TRW violated ERISA, the court found that all of the billed hours had some bearing on "[p]laintiffs' efforts to pursue relief caused by those ERISA violations." The court awarded plaintiffs a total of $183,300.91.

TRW and plaintiffs both appeal the district court's decision. TRW appeals the district court's grant of summary judgment on the ERISA vesting claim and the grant of ERISA attorney's

fees under § 1132(g) incurred after the date of the arbitration, while plaintiffs appeal the district court's denial of attorney's fees incurred through the date of the arbitration.

The district court's summary judgment and attorney's fee orders were beyond its power. The district court lacked the authority to rule on those matters because the ERISA vesting claim and ERISA attorney's fee claim under 29 U.S.C. § 1132(g) were both subject to mandatory arbitration under the CBA, allowing only limited court review for issues of legality or enforcement. Once the district court ordered all claims subject to mandatory arbitration, the arbitrator had sole authority to determine the merits and issue a remedy, and the district court had no power to second-guess the arbitrator's decision.

The 2002 CBA mandated arbitration of both the ERISA vesting claim and ERISA statutory attorney's fees claim, for the following reasons.

We begin with background principles. The Supreme Court has held that a CBA may be read to compel arbitration of certain statutory claims only if the agreement is clear and unmistakable. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009). As to ERISA, our precedent specifies that "ERISA claims can be the subject of arbitration pursuant to a CBA, even without an express listing of 'ERISA claims' in the arbitration provision, because the genesis of the claim is the agreement, not a statute." *VanPamel v. TRW Vehicle Safety Sys., Inc.*, 723 F.3d 664, 669 (6th Cir. 2013). In such cases, the ERISA claim is "derived, at least in part, on the rights a plaintiff may have under a collective bargaining agreement." *Id.*

First, the language of the CBA reveals that the parties intended for all claims, including ERISA claims, to be subject to mandatory arbitration because the ERISA claims required interpretation of the CBA. Section 4.1 of the CBA declares that the "arbitration procedures provided herein are adequate to provide fair and final determination of all grievances which may

arise out of the employment relationship during the term of this Agreement" and that arbitration "shall be the exclusive remedy for the enforcement by them of any claim against the Company." The CBA defines the term "grievance" as any dispute over "claims that the company has failed to carry out a provision of the Agreement and which involves a question concerning the interpretation or application of or compliance with this Agreement . . . ." The parties thus agreed that arbitration would be the exclusive remedy for any dispute requiring interpretation or application of the CBA. Also, plaintiffs' ERISA vesting claim alleges that the CBA contains an "employee welfare benefit" plan, whose breach by TRW violated ERISA.

The district court determined that plaintiffs were attempting to enforce benefits allegedly provided under the CBA. Therefore, plaintiffs' claims required interpretation and application of the CBA, and were required to be arbitrated. This included the ERISA claims, because the court determined that plaintiffs were "essentially seeking rights that arise out of the CBA and not an independent ERISA plan." The court noted that if the "ERISA claims did not require interpretation of the CBA, the Court would be inclined to stay litigation on those claims until the arbitrable claims are resolved." But, plaintiffs presented no claims that were independent of the CBA, so the court did not issue a stay. Accordingly, plaintiffs were required to arbitrate the ERISA claims.

Additionally, the ERISA statutory claim under § 1132(g)(1) [1] seeking attorney's fees was subject to mandatory arbitration alongside the ERISA vesting claim, because the statutory claim also arose out of the CBA. To obtain attorney's fees under the statute, plaintiffs needed to achieve "some degree of success on the merits" of the underlying ERISA vesting claim. *Hardt v. Reliance*

---

[1] 29 U.S.C. § 1132(g)(1) provides:

> (g) Attorney's fees and costs; awards in actions involving delinquent contributions
> (1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

*Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010) (quotation omitted). Demonstrating success on the merits did not mean plaintiffs were automatically entitled to attorney's fees, however, because the attorney's fee provision is discretionary.[2] *See id.* Nevertheless, to achieve some success on the merits, plaintiffs had to show that TRW committed an ERISA violation by breaching the CBA. The attorney's fee claim is "derived, at least in part" on plaintiffs rights under the CBA, and its "genesis" is accordingly the CBA. *See VanPamel*, 723 F.3d at 669–70.

Moreover, plaintiffs waived any objection to mandatory arbitration of their ERISA claims because they voluntarily dismissed their appeal of the district court's order to compel arbitration. In their appeal before this Court, plaintiffs specifically objected to being required to arbitrate their ERISA claims, arguing that because arbitrators rarely award fees, plaintiffs are unlikely to recover attorney's fees under § 1132(g) of the ERISA statute at arbitration. However, plaintiffs chose voluntary dismissal of their appeal after receiving a favorable outcome from the arbitrator. The dismissal marked plaintiffs' consent to have all claims resolved by the arbitrator, who had sole authority under the CBA to decide the merits and issue a remedy.

Second, the LMRA claim alleging breach of contract and the ERISA vesting claim at issue here were subject to mandatory arbitration because the genesis of the ERISA claim was the agreement. Prior to the arbitration hearing, both parties agreed to have the arbitrator first determine whether TRW breached the CBA when it attempted to replace the employees' health insurance coverage with HRAs. Plaintiffs contend that because the parties stipulated that the arbitrator would

---

[2] In this Circuit, courts deciding whether to award ERISA attorney's fees also consider (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. *Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985); *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 899 (6th Cir. 2020) (affirming the viability of the *King* factors after the decision in *Hardt*). As a result, unlike the ERISA vesting claim, the attorney's fee inquiry may not always rise and fall with the underlying contractual claim.

Case Nos. 19-2252/2262, *UAW Int'l v. TRW Automotive*

decide issues of "contract interpretation and breach," the arbitrator therefore did not decide the ERISA claims. However, because plaintiffs' LMRA and ERISA vesting claims turned on the CBA provisions guaranteeing certain health insurance benefits, a finding that TRW breached those provisions necessarily resolved those claims. We have previously held that violations of health insurance benefits provided in a collective bargaining agreement also qualify as violations of welfare benefit plans under ERISA. *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991) (abrogated on other grounds). This is confirmed by plaintiffs' own demand for remedies before the arbitrator, where they argued that TRW's same action (replacing Humana coverage with HRAs) was both a breach of "the governing CBAs" and "violated ERISA." The arbitrator's decision that TRW breached the CBA meant that TRW also violated rights vested under ERISA. TRW even acknowledged the arbitrator's determination that it violated ERISA by not presenting any substantive opposition to plaintiffs' renewed motion for summary judgment on the ERISA vesting claim. The district court, agreeing with the magistrate judge, similarly concluded that the arbitrator's decision resolved the ERISA vesting claim "because a breach of the CBA with respect to insurance benefits also constitutes a violation of ERISA."

Once the arbitrator finds a merits violation, the parties are responsible for raising any remedy issues in their remedy demands during arbitration. Plaintiffs argue that the attorney's fee issue is not subject to arbitration because the dispute was not yet ripe at the time of the district court order mandating arbitration. This argument is without merit. The CBA provides that the arbitration procedures will be the exclusive remedy for any claims against TRW. The arbitrator was therefore authorized to decide the merits of the claims and fashion an appropriate remedy based on that decision. Remedy issues directly stem from the merits of the dispute and it would be anomalous for the arbitrator not to address those issues after making a merits determination.

12

The Supreme Court has expressed a strong preference that arbitrators be the ones to determine remedy issues, particularly in the context of labor-management disputes. *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596-97 (1960). The parties do not have to return to the district court once a merits violation is found just to seek permission to present "ripe" remedy issues to the arbitrator. Plaintiffs' position, presented without any supporting legal authority, would lead to an untenable result where the arbitrator performs factfinding but the district court issues the remedy. Not only would this contradict the CBA's declaration that arbitration is the exclusive remedy for any dispute, but it would also defeat the purpose of arbitration if the parties still have to litigate remedy issues in federal court.

In addition, plaintiffs sought ERISA attorney's fees in their federal complaint; the district court then compelled the entire "dispute" to arbitration and dismissed the case without prejudice. Plaintiffs then subjected their § 1132(g) ERISA claim for attorney's fees to binding arbitration by raising it in their remedy demand. Plaintiffs' argument in passing at the arbitration hearing that they were not seeking ERISA attorney's fees from the arbitrator, and instead would seek them in federal court, is unavailing. Once plaintiffs presented the fee request to the arbitrator in the "remedies sought" portion of the arbitration demand, they consented to the arbitrator's authority to determine whether or not to award attorney's fees. Plaintiffs requested that if they received a favorable outcome at summary judgment, the arbitrator should "[d]irect TRW to pay the costs and expenses and attorney's fees of UAW, class counsel, and the retirees . . . incurred in connection with the litigation and the arbitration proceedings, under 29 U.S.C. § 1132(g)(1) . . . ." Plaintiffs cannot claim they did not want the arbitrator to award attorney's fees while also requesting relief under the ERISA attorney's fee provision. The arbitrator declined to award fees under the statute, and plaintiffs are bound by that determination. By consenting to arbitrating the claim, plaintiffs

waived any objection to the arbitrator's authority to issue a final decision on the merits. *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003). Plaintiffs cannot thereafter go to the district court for a second bite at the apple simply because they disagree with the outcome.

Finally, the parties' stipulations prior to the arbitration hearing reveal their acceptance of the arbitrator's authority to decide both the ERISA vesting claim and § 1132(g) attorney's fee claim. The parties did not, as plaintiffs argue, limit the arbitrator's decision to only contractual issues. The parties' pre-hearing stipulation was that they would submit cross motions of summary judgment to the arbitrator limited to the issues of "contract interpretation and breach." The narrow scope of the summary judgment motions did not prevent the arbitrator from deciding other issues. In fact, the parties stipulated that each "reserve[d] the right to present further evidence to address issues unresolved by the Arbitrator's decision on the motions, including factual disputes; ERISA issues; etc." This reveals that the parties contemplated having the *arbitrator* decide any ERISA issues that were not resolved by the summary judgment motions. It cannot be read to reserve a right to present issues before the district court. Because all of plaintiffs' claims were subject to mandatory arbitration, including the ERISA claims, this means the ERISA claims were either resolved by the arbitrator at summary judgment or should have been presented to the arbitrator under this stipulation. If plaintiffs believed there were outstanding ERISA issues, they should have presented them to the arbitrator after the summary judgment determination. That they had the opportunity to raise the issue and chose not to suggests that plaintiffs believed that the arbitrator's decision resolved all of the claims in their favor. When they did not get the remedy they desired, they raised these motions to overturn the arbitrator's judgment.

Because the CBA mandated arbitration of plaintiffs' ERISA and attorney fee claims, and the district court accordingly compelled arbitration, the court lacked the authority to subsequently rule on these issues, apart from the limited power to vacate and the power to resolve issues of compliance with the arbitrator's award.

The Supreme Court has cautioned that courts have no authority to second-guess an arbitrator's decision, particularly with respect to labor-management disputes. *Enter. Wheel*, 363 U.S. at 596-97. The Court has firmly rejected judicial interference with the arbitrator's award, writing that "courts . . . have no business weighing the merits of the grievance . . . ." *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960). "When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal." *Id.* at 569.

We have reinforced these instructions with our own precedent, holding that "where a labor agreement mandates arbitration, courts must order [a] resort to private settlement mechanisms without dealing with the merits of the dispute." *Armco Employees Independent Federation, Inc. v. Armco Steel Co. L.P.*, 65 F.3d 492, 496 (6th Cir. 1995) (quotation omitted). "[D]istrict courts are not empowered to perform factfinding or second-guessing," particularly with respect to labor-management conflicts. *Id.* The arbitrator has sole authority to conduct factfinding and "is the only entity empowered to fashion a proper remedy." *Id.* at 497, 498. We reiterated this principle more recently, noting that "[t]he 'proper approach,' therefore, is for courts to refuse to review the merits of an arbitration award." *Brotherhood of Locomotive Eng'rs v. United Transp. Union*, 700 F.3d 891, 900 (6th Cir. 2012) (quoting *Enter. Wheel*, 363 U.S. at 596). Once the factfinding is complete and a violation is found, "an arbitrator, not a court, can then decide whether the Union's attorney's

Case Nos. 19-2252/2262, *UAW Int'l v. TRW Automotive*

fees should be paid by [the employer]." *Armco*, 65 F.3d at 497-98. While a court does have authority to review an arbitrator's decision "to determine whether an arbitrator's award exceed the limits of his contractual authority . . . , it may not review the merits of an arbitration award." *Timken Co. v. Local Union No. 1123, United Steelworkers*, 482 F.2d 1012, 1014 (6th Cir. 1973).

Plaintiffs' attempts to distinguish *Armco* are unconvincing. In *Armco*, we affirmed dismissal because the district court lacked the authority to decide the merits of the plaintiffs' arbitrable claims where additional factfinding by the arbitrator was required. *Armco*, 65 F.3d at 497-98. The arbitrator had issued an award in favor of the employees requiring the defendant to maintain proper levels of staffing under certain circumstances. *Id.* at 494-95. A dispute arose post-arbitration as to whether the company violated the arbitrator's award because it was ambiguous whether certain types of job listings satisfied the arbitrator's award. *Id.* at 495, 498. We held that additional factfinding was necessary to determine whether the company actually did violate the award. *Id.* at 497-98. Only the arbitrator had the authority to conduct that factfinding and decide the merits of plaintiffs' claim because it required interpretation of the parties' CBA. *Id.* Moreover, because the parties' CBA provided for arbitration as the exclusive remedy for any dispute, the district court had no authority to adjudicate the merits or craft any sort of remedy. *Id.* at 498. Here, plaintiffs contend that they are not suing to enforce an arbitral award or for breach of contract, so *Armco* does not apply. This argument is without merit. Just as in *Armco*, the arbitrator in this case had sole authority to decide the merits of the ERISA vesting and statutory claims because the claims required interpretation of CBA's benefit provisions. That was the basis for the district court's order compelling the LMRA and ERISA claims to arbitration in the first place. Thus, only the arbitrator could issue a final determination as to whether TRW violated rights vested under ERISA by breaching the CBA.

Case Nos. 19-2252/2262, *UAW Int'l v. TRW Automotive*

Additionally, because the CBA here declared that arbitration was to be the exclusive remedy for any dispute between the parties arising from the agreement, the arbitrator was the only entity empowered to craft a remedy, just as in *Armco*. 65 F.3d at 498. This is consistent with the Supreme Court's instruction that "where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Courts "are not authorized to reconsider the merits of an [arbitration] award." *Id.* at 36. Furthermore, as we noted in *Armco*, this authority to decide the merits and fashion a remedy means that the arbitrator, not the district court, is the one who decides whether the defendant should pay the plaintiffs' attorney's fees. 65 F.3d at 498. It is immaterial that the attorney's fee issue here arose under the ERISA statute, while the fee request in *Armco* was based on an allegation of bad faith, because both fee requests turned on the merits of the underlying claim (here the vesting claim) and only the arbitrator had authority to decide the merits. *Id.* at 495.

The district court could not "reserve" authority for itself by dismissing the claims without prejudice in its order compelling arbitration. The court's declaration that any party could file a motion to reopen the case after arbitration does not alter the district court's circumscribed authority where a labor agreement mandates arbitration. No caselaw supports plaintiffs' position that a district court can reserve authority to review an arbitrator's award simply by dismissing claims without prejudice. If this were the law, any party that was unhappy with the arbitrator's award could seek a better outcome at the district court, so long as the claims were dismissed without prejudice. This would contradict the Supreme Court's strongly stated preference that labor-management disputes be resolved by arbitrators, not courts. *See Enterprise Wheel*, 363 U.S. at 596-98. Arbitrators are able to "settle disputes at the plant level" that require "knowledge of the

17

Case Nos. 19-2252/2262, *UAW Int'l v. TRW Automotive*

custom and practices of a particular factory or of a particular industry as reflected in particular agreements." *Id.* at 596.

Of course, the district court could have entertained a timely motion to vacate or modify the award, on the very limited grounds applicable to such motions. But plaintiffs did not bring a timely motion to vacate or modify the award. In their post-arbitration briefing on the attorney's fee request before the district court, plaintiffs admitted that they were not seeking to vacate or modify the arbitrator's award. The arbitrator's award decided the ERISA attorney's fees issue, so the only way to obtain attorney's fees would be for plaintiffs to challenge the award itself. If plaintiffs were unhappy with the award of no attorney's fees, they should have filed a motion to vacate or modify the award. Absent such a motion, the district court had no authority to alter the arbitrator's award. *Armco*, 65 F.3d at 496. A party may file a motion to vacate or modify an arbitrator's award under Section 301 of LMRA, 29 U.S.C. § 185, which authorizes courts to enforce or vacate labor arbitration awards. *See, e.g.*, *Champion Int'l Corp. v. United Paperworkers Int'l Union*, 779 F.2d 328, 329, 332 (6th Cir. 1985). Courts are authorized to vacate arbitration awards where the award does not "draw[] its essence from the collective bargaining agreement." *Enter. Wheel*, 363 U.S. at 597. An arbitrator's award "fails to derive its essence from the agreement when (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement." *Dallas & Mavis Forwarding Co. v. Gen. Drivers, Local Union No. 89*, 972 F.2d 129, 134 (6th Cir. 1992) (internal quotation marks omitted) (citation omitted). Plaintiffs did not move to vacate or modify the award, so the district court had no basis to review the award.

18

Case Nos. 19-2252/2262, *UAW Int'l v. TRW Automotive*

Even if we treat the motions for summary judgment and attorney's fees as a challenge to the award under the LMRA, the district court still lacked authority to hear the dispute because the challenge was not timely made. In a LMRA § 301 challenge, timeliness "is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." *UAW Int'l v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05 (1966). With respect to Michigan law, Michigan's Uniform Arbitration Act, which went into effect in 2013, is closely analogous to a § 301 action involving a dispute over a labor CBA. *See* Mich. Comp. Laws § 691.1703. Based on this statute, challenges to an arbitration award brought pursuant to § 301 of the LMRA in Michigan are therefore subject to a 90-day limitations period. *See id.* § 691.1703(2). Plaintiffs filed their renewed motion for summary judgment and first motion for attorney's fees approximately six months after the arbitration award was issued. It makes no difference that plaintiffs filed their motions for summary judgment and attorney's fees fourteen days after voluntarily dismissing their appeal of the motion to compel arbitration, because under the Michigan statute the limitations period runs starting from the date the "moving party receives notice of the award." *Id.* Thus, plaintiffs' motions were an untimely challenge to the arbitration award.

Furthermore, the district court had no authority to grant plaintiffs' motions because the reopened issues did not relate to enforcement of the arbitrator's award. Parties may seek judicial review to confirm or enforce arbitration awards. *Enter. Wheel*, 363 U.S. at 597. Courts can enforce compliance with arbitration awards but cannot go beyond the award to decide issues that the arbitrator did not decide. *Cleveland Paper Handlers v. E.W. Scripps Co.*, 681 F.2d 457, 459-60 (6th Cir. 1982) (citing *Enter. Wheel*, 363 U.S. at 599). Here, the ERISA dispute was not related to enforcement of the arbitrator's award, because the arbitrator had determined that TRW had breached the CBA but did not award plaintiffs attorney's fees under § 1132(g). At best, plaintiffs'

19

request for attorney's fees was a challenge to the award, not a request enforce compliance with the award.

Although the district court did have authority to review plaintiffs' subsequent timely motions to enforce the arbitrator's award, the resolution of those matters did not give the court the authority to determine the merits of the ERISA claims and alter the award. After the arbitrator issued the award ordering TRW to make plaintiffs whole, a dispute arose between the parties as to the appropriate relief for nine of the retirees. The parties raised the dispute before the district court, which had authority to enforce the award under Section 301 of the LMRA, and the court found in favor of plaintiffs. The resolution of this dispute could not serve as a basis for the court's later award of attorney's fees to plaintiffs, because a prevailing party on a motion to enforce an arbitration award is not entitled to attorney's fees absent an authorizing statute, contractual provision, or a showing of bad faith. *See Monroe Auto Equip. Co. v. UAW*, 981 F.2d 261, 269-70 (6th Cir. 1992). Indeed, the district court did not even cite plaintiffs' successful motion to enforce the arbitration award as a basis for the fee award at issue. TRW's agreement to litigate these discrete enforcement issues before the court did not mean TRW consented to the court's attempt to second-guess the arbitrator. Such consent would be ineffective regardless, because the court had no authority to review the ERISA claims in the first place. Additionally, TRW consistently opposed plaintiffs' motions to reopen the ERISA claims on the grounds that the district court lacked "jurisdiction" to do so because the issues could only be resolved by the arbitrator. Finally, there is no evidence indicating that "TRW continued to violate ERISA" after the arbitration, as plaintiffs allege on appeal; therefore this argument does not provide the court a valid basis to review the ERISA claims. Thus, none of these enforcement issues authorized the district court to decide the ERISA claims and award fees.

Finally, in any event, the arbitrator did decide the ERISA vesting claim and § 1132 claim for attorney's fees in his award. The district court's primary justification for issuing the summary judgment and attorney's fees orders in plaintiffs' favor was that the arbitrator did not decide the ERISA claims. However, this conclusion collapses in light of our reasoning above. The relationship between the ERISA and LMRA claims and the parties' arguments during arbitration reveals that the arbitrator did in fact decide the ERISA claims. His decision that TRW breached the CBA meant that TRW also committed an ERISA violation, as the district court itself recognized and TRW admitted by not presenting any substantive opposition to plaintiffs' renewed motion for summary judgment. The arbitrator also declined to award attorney's fees under § 1132(g) after plaintiffs specifically asked him to do so. Once the arbitrator determined that TRW violated the CBA, he necessarily resolved the merits of both ERISA claims. "Arbitrators have no obligation to the court to give their reasons for an award." *Enter. Wheel*, 363 U.S. at 598. After deciding that TRW breached the CBA, the arbitrator was simply required to fashion an appropriate remedy. *Armco*, 65 F.3d at 498. He had no obligation to disclose whether or not the award was granted in part because TRW's breach constituted a violation of ERISA. *Enter. Wheel*, 363 U.S. at 598. The ERISA claim was submitted to and decided by the arbitrator, leaving no room for any district court review on the merits. If the parties felt that there were unresolved ERISA issues, they should have presented those to the arbitrator consistent with their pre-hearing stipulations. The district court's disagreement with the arbitrator's decision did not confer authority for it to second-guess the arbitrator. *Armco*, 65 F.3d at 496. Plaintiffs cannot recover the post-arbitration attorney's fees they request because the arbitrator already determined that they were not entitled to recover on claims arising out of the CBA. The arbitrator had sole authority to fashion a remedy,

Case Nos. 19-2252/2262, *UAW Int'l v. TRW Automotive*

and absent a timely motion to vacate or modify the award, the court could not alter the award to grant plaintiffs' request for attorney's fees. *Id.*

However, even if plaintiffs are correct that the arbitrator's award did not address the ERISA claims, it makes no difference because the district court still had no authority to decide those claims. The district court properly ordered all claims, including the ERISA claims, subject to mandatory arbitration. Plaintiffs waived any objection to that order when they dropped their previous appeal before this Court. The district court could not go back and decide the merits of the claims once arbitration of those claims was compelled. *See Enter. Wheel*, 363 U.S. at 599. Once those issues were delegated to the arbitrator, the court had no authority to adjudicate issues that the arbitrator did not reach. *Cleveland Paper Handlers*, 681 F.2d at 460. The arbitrator had sole authority to conduct factfinding, adjudicate the merits, and issue a remedy, if any, on the basis of the ERISA vesting claim and associated request for attorney's fees. Thus, regardless of whether the arbitrator decided the ERISA issue, the court still lacked the authority to grant plaintiffs' motions for renewed summary judgment and attorney's fees.

Accordingly, because the district court lacked the authority to award fees, the award is reversed, and we do not reach any issues about the proper scope of fees if the district court did have the authority to grant them.

For the foregoing reasons, we reverse the judgment of the district court.